# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

Nº 13-CV-7277 (JFB)(ARL)

ISABEL LOCORRIERE,

Plaintiff,

VERSUS

NBTY, INC.,

Defendant.

**MEMORANDUM AND ORDER**
February 17, 2016

JOSEPH F. BIANCO, District Judge:

Plaintiff Isabel LoCorriere ("LoCorriere" or "plaintiff") brings this action against defendant NBTY, Inc. ("NBTY," the "Company," or "defendant"), alleging discrimination based upon national origin and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), and national origin discrimination, disability discrimination, and retaliation in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.* Plaintiff, a former employee of NBTY, claims that defendant discriminated against her on the basis of national origin, ethnicity, race,[1] and disability, and retaliated against her for complaining about the discrimination. Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes. For the reasons set forth below, the Court grants defendant's motion for summary judgment on the federal claims.

In particular, it is uncontroverted that, while plaintiff was working in a quality insurance inspection position in Bohemia, she experienced a physical reaction, which was diagnosed as due to exposure to alpha lipoic acid at the plant and which resulted in her being taken for medical treatment at Brookhaven. Because multiple physicians advised plaintiff that she needed to avoid

---

[1] Although a claim alleging racial discrimination is absent from plaintiff's complaint, she alleges racial discrimination, along with discrimination on the basis of national origin and ethnicity throughout her opposition. In any event, any race discrimination claim under Title VII could not survive summary judgment for the same reasons the other claims fail to do so.

exposure to alpha lipoic acid and raw materials containing that substance were utilized in the Bohemia plant, NBTY transferred plaintiff to a nutritional bar facility in Amityville. It is also undisputed that (1) after plaintiff requested a transfer from Amityville because it was too far from her home, she was offered and accepted a transfer to a bilingual customer service position in Bohemia; and (2) after plaintiff complained about the work in that position, plaintiff was offered and accepted a position in the coating department. There is absolutely no evidence in the record to support a rational finding that any of these transfers were motivated by discriminatory animus. Although plaintiff also complains that she was required to submit to a drug test after she received medical treatment due to her exposure to alpha lipoic acid at the plant, it is uncontroverted that NBTY has a policy to drug test all employees who have an accident resulting in bodily injury on Company property or on Company time. Defendant has provided a list of other employees who were also drug tested, regardless of positions, and plaintiff has failed to point to a single employee who had bodily injury on the job but was not given a drug test. Thus, no rational jury could find discriminatory animus as to the drug test. Finally, there is no evidence to support plaintiff's claim that her disciplinary warnings were motivated by discriminatory intent. It is undisputed that (1) plaintiff told her supervisor in the coating department that the workers were "clowns" and would "make errors" and, the following day, plaintiff claimed to have found defects in two products, but NBTY's investigation found no defect; and (2) after that disciplinary warning, plaintiff took product samples from the floor. Plaintiff admits to taking the product samples, but claimed to have permission (which was denied by the Quality Assurance Lead Inspector). There is simply no evidence to support a rational finding by a jury that the disciplinary warnings, even under plaintiff's version of the events, were discriminatory. Thus, beyond her conclusory and speculative assertions, plaintiff has failed to provide a single piece of evidence to support her claims of discrimination.

Plaintiff's claims of retaliation, hostile work environment, and constructive discharge fail to survive summary judgment for similar reasons. With respect to the retaliation claim, although plaintiff claims that the transfers were retaliatory, plaintiff has put forth no evidence to controvert the evidence in the record (as discussed above) that she was moved between facilities to avoid exposure to alpha lipoic acid, and to accommodate her request to be closer to her home, as well as her request for a different position after she was displeased with the customer service position. Moreover, a rational jury could not view the disciplinary warnings as retaliatory given that plaintiff admits to the conduct that led to the discipline (but provides an explanation for the conduct), and given that there is no evidence in the record to support the existence of any retaliatory animus. With respect to the hostile work environment claim, there is no evidence in the record that the Company's enforcement of its policies and procedures as it relates to plaintiff's conduct created a hostile work environment based on plaintiff's national origin, ethnicity, or disability. Finally, with respect to the constructive discharge claim, plaintiff offers no evidence from which a rational jury could find that her working conditions were so intolerable that a reasonable person in her position would have felt compelled to resign. Although plaintiff suggests that threats of termination could create a constructive discharge, there is no evidence of any such threat; in fact, there is uncontroverted evidence in the record that

(1) when she indicated her displeasure with her customer service position, she was offered a severance package or another transfer (which she ultimately took), and (2) when she received her disciplinary notices, she was offered coaching, rather than being threatened with termination. Instead of agreeing to the coaching, plaintiff went on medical leave and ultimately found new employment.

In sum, even resolving any factual disputes in plaintiff's favor and construing the evidence most favorably to plaintiff, no rational jury could find for plaintiff on any of the federal claims. Accordingly, plaintiff's federal claims for discrimination, retaliation, hostile work environment, and constructive discharge cannot survive summary judgment. In light of the dismissal of the federal claims, the Court declines to exercise supplemental jurisdiction over the state claims.

I. BACKGROUND

A. Factual Background

The Court takes the following facts from the parties' affidavits, depositions, exhibits, and Rule 56.1 Statements of Fact. The Court construes the facts in the light most favorable to the nonmoving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Although the Rule 56.1 statements contain specific citations to the record, the Court cites to the statements rather than to the underlying citations. Unless otherwise noted, where a Rule 56.1 statement is cited, that fact is undisputed or the opposing party has not pointed to any contradictory evidence in the record.

Plaintiff is a Hispanic female of Mexican national origin. (*See* Ex. A to Pl.'s 56.1, LoCorriere Dep. at 11.) She began working for NBTY, a Long Island based manufacturer, wholesaler, and retailer of vitamins and nutritional supplements, in April 2004 as an inspector at the Company's manufacturing facility in Bellport, New York. (Def.'s 56.1 ¶ 3.) She subsequently applied for and obtained a quality assurance inspector position in the encapsulation department at NBTY's production facility in Bohemia, New York. (*Id.* ¶ 4.) In the Bohemia plant, a substance known as alpha lipoic acid is utilized in the raw materials.[2] (*Id.* ¶ 6.)

On February 13, 2012, plaintiff experienced a physical reaction in the Bohemia plant, for which she received medical treatment at Brookhaven Hospital. (Def.'s 56.1 ¶¶ 7-8.) The hospital physician stated that plaintiff could "resume regular activity when [her] symptoms resolve[d] and [a] sense of well-being return[ed]" but recommended that she have "[n]o exposure to [the] offending agent," alpha lipoic acid. (*Id.* ¶ 9.) Defendant sent plaintiff for a drug test at First Choice Medical following her medical treatment. (*Id.* ¶ 12.) First Choice Medical indicated that plaintiff could "[r]eturn to work without restrictions on 2/15/2012" but "should avoid alpha lipoic acid." (*Id.* ¶ 13.) Plaintiff was subsequently evaluated by two different physicians who recommended she avoid alpha lipoic acid exposure. (*Id.* at ¶¶ 15-16.)

On February 16, 2012, plaintiff called NBTY's hotline with a complaint.[3] (*Id.* ¶

---

[2] Although plaintiff disputes this fact because no record citation was provided in the defendant's 56.1 statement, (*see* Pl.'s Resp. to Def.'s 56.1 ¶ 6), there is uncontroverted evidence in the record that alpha lipoic acid was present in the Bohemia facility. (*See, e.g.*, Ex. D to Def.'s 56.1, Madeline Garcia Dep. at 41, 46-47.)

[3] According to defendant, plaintiff complained specifically that a supervisor, William Evans, "gave [her] a hard time" about her allergic reaction and that he "is very disrespectful to [her] and is constantly trying to get [her] in trouble." (*Id.* ¶ 17.) Plaintiff

3

17.) She again called the hotline on March 12, 2012.[4] (Def.'s 56.1 ¶ 18.)

In April 2012, plaintiff was transferred to a nutritional bar facility in Amityville, which she complained to Human Resources was too far from her home.[5] (Def.'s 56.1 ¶¶ 19, 23.) Plaintiff met with Karla Packer, defendant's Senior Vice President for Human Resources and requested a transfer. (*Id.* ¶¶ 24-25.) In July 2012, defendant offered and plaintiff accepted a transfer to a bilingual customer service position in Bohemia, which commenced on August 6, 2012.[6] (*Id.* at ¶¶ 29-30.) After transferring to customer service, plaintiff complained that the work was frustrating and "too difficult" and that customers did not understand her accent. (Def.'s 56.1 at ¶¶ 31-32.) On September 26, 2012, defendant offered plaintiff the options of remaining in customer service, transferring to the coating department in Bohemia, or leaving NBTY with a severance package. (*Id.* at ¶ 33.) Plaintiff accepted the coating department position effective October 1, 2012. (*Id.* ¶ 34.)

On or around October 8, 2012, plaintiff and her manager, Trish Lamanna, had a dispute regarding whether NBTY should provide plaintiff with a jacket and schedule her for overtime. (*Id.* ¶¶ 36, 39-40; Pl.'s Counter 56.1 ¶¶ 75-77.) Lamanna and plaintiff spoke with Patrick Mazzeo, Vice-President of Human Resources, about their conflict, and plaintiff also spoke with Packer about the confrontation and indicated an interest in discussing the severance package previously offered. (Def.'s 56.1 ¶¶ 39-42.) Plaintiff then called the Company's hotline twice on October 10, 2012, complaining about Lamanna.[7] (*Id.* ¶¶ 43-44). On October 25, 2012, Mazzeo concluded that plaintiff had been confrontational and disrespectful when interacting with Lamanna. (Def.'s 56.1 ¶ 46.) Following Mazzeo's investigation and findings, plaintiff accused Lamanna of wanting her "out from this building" due to her ethnicity and prior complaints against William Evans, an NBTY Supervisor. (*Id.* ¶ 48.)

According to plaintiff, on or around December 6, 2012, she filed a charge of employment discrimination based on national origin, ethnicity, disability, and retaliation for opposition to unlawful employment practices with the Equal Employment Opportunity Commission ("EEOC"). (Pl.'s Counter 56.1 ¶ 16.)

---

admits making a complaint of discrimination, but disputes the accuracy of the statements provided by defendant. (Pl.'s Counter 56.1 ¶ 33.)

[4] According to defendant, plaintiff complained that she felt like she was being "retaliated against" for reporting an issue at work in February. (*Id.* ¶ 18.) Plaintiff admits making a complaint of discrimination but disputes the accuracy of the statements provided by defendant. (Pl.'s Counter 56.1 ¶ 42.)

[5] Also in April 2012, plaintiff requested family and medical leave and defendant granted her request, permitting her to use accrued personal and vacation, advancing her additional vacation time, and authorizing additional unpaid leave. (Def.'s 56.1 ¶ 22.)

[6] In July 2012, plaintiff also inquired about returning to the Quality Assurance Department in Bohemia but, although a "controlled skin prick test" was negative for alpha-lipoic acid, plaintiff refused additional testing to confirm that there was no allergy. (*See* Ex. I to Def.'s Mem. of Law, at NBTY 1510, 1555 ("As explained prior to testing, there are no standardized tests for this product, but it is based on usual protocols for testing. Further testing was refused by patient.")) In any event, plaintiff was not recommended for the lab tech position in the QA Department because there was an individual better suited for that position, in particular, he had a Bachelor's degree in Chemistry. (*Id.* at NBTY 1689, 1710.)

[7] Plaintiff admits that she called the hotline twice on October 10, 2012 to complain of discrimination, but disputes the accuracy of the statements provided by defendant. (Pl.'s Counter 56.1 ¶ 78.)

On January 24, 2013, plaintiff told Roberto Corado, a coating department supervisor, "si segues actuando de la misma manera como payaso voy a encontrar mas herrores."[8] (Def.'s 56.1 ¶ 49.) On January 25, 2013, plaintiff allegedly found excessive "spots" on tablets produced by Corado's team. (Def.'s 56.1 ¶ 50.) These items were then reviewed by Lamanna and two product specialists, who found that the products met NBTY's quality standards and, thus, were not defective. (*Id.* ¶ 51.) Following an investigation, defendant issued a disciplinary warning to plaintiff regarding her "confrontational and disrespectful" comments and the unsubstantiated reported product failure. (*Id.* ¶ 52.) After the disciplinary warning, plaintiff took product samples from the floor, an action defendant contends is strictly prohibited. (*Id.* ¶¶ 54-55.) Plaintiff admitted to taking the samples, but claimed that she had permission from the QA Lead Inspector, Herold Justima, which he denied.[9] (*Id.* ¶¶ 56-57.) On March 11, 2013, defendant issued a final warning to plaintiff, relating to this incident. (*Id.* ¶ 58.)

On March 11, 2013, plaintiff went home after reporting a headache and subsequently requested family and medical leave. (*Id.* ¶ 59.) She then resigned on April 8, 2013, and began a new job. (*Id.* ¶ 61.)

B. Procedural Background

Plaintiff filed the complaint on December 23, 2013. Defendant moved for summary judgment on June 10, 2015. Plaintiff opposed on July 17, 2015. Defendant replied on August 7, 2015. The Court held oral argument on September 16, 2015. The Court has fully considered the submissions of the parties.

II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The Court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

---

[8] Defendant contends that this translates to "the more they act like clowns, the more mistakes I will find." (*Id.*) Plaintiff alleges that this translates to "instead of doing their work, they are playing [like clowns] and make errors." (Pl.'s Counter 56.1 ¶ 92.) For purposes of this motion, the Court has accepted plaintiff's translation or interpretation.

[9] There is no allegation or evidence that Mr. Justima was motivated by discriminatory animus.

586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

## III. DISCUSSION

Plaintiff alleges that defendant (1) discriminated against her on the basis of her national origin, ethnicity, race, and disability; (2) retaliated against her for her discrimination complaints; (3) created a hostile work environment; and (4) constructively discharged her.

### A. Discrimination in Violation of Title VII and the ADA

Defendant argues that summary judgment is appropriate on the Title VII and ADA discrimination claims because plaintiff cannot establish a prima facie case of discrimination, defendant has articulated legitimate non-discriminatory reasons for its actions, and plaintiff is unable to show pretext. As set forth below, the Court concludes that, even construing the evidence most favorably to plaintiff, no rational jury could find that the reasons for defendant's treatment of plaintiff were a pretext for discrimination

#### 1. Legal Standards

##### a. Title VII

Title VII prohibits discrimination against an employee based on his or her gender, race, or national origin. *See* 42 U.S.C. § 2000e-2(a). Here, plaintiff claims that defendant discriminated against her on the basis of her national origin, ethnicity, and race. The "ultimate issue" in any employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment action was motivated, at least in part, by an "impermissible reason," i.e., that there was discriminatory intent. *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 119 (2d Cir. 1997). In the absence of direct evidence of discrimination, a plaintiff in an employment discrimination case must satisfy the three-step *McDonnell Douglas* test.

First, the plaintiff must establish a prima facie case of unlawful discrimination by showing that (1) she is a member of a protected class (2) who performed her job satisfactorily (3) but suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination (or retaliation). *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 & n.13 (1973) (noting that elements of a prima facie case vary depending on factual circumstances); *Stratton v. Dep't for the Aging for the N.Y.C.*, 132 F.3d 869, 879 (2d Cir. 1997).

Second, if the plaintiff establishes a prima facie case, "a rebuttable presumption of discrimination arises and the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision." *Stratton*, 132 F.3d at 879; *see also Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142-43 (2000). "The purpose of this step is to force the defendant to give an explanation for its conduct, in order to prevent employers from simply remaining silent while the plaintiff founders on the difficulty of proving discriminatory intent." *Stratton*, 132 F.3d at 879 (citation and internal quotation marks omitted).

Third, if the employer articulates a nondiscriminatory reason for its actions, the presumption of discrimination is rebutted and it "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993); *see also James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The burden then shifts back to the plaintiff to show, without the benefit of any presumptions, that a reasonable jury could conclude that more likely than not the employer's actions were motivated, at least in part, by a discriminatory reason. *See James*, 233 F.3d at 154; *Connell v. Consol. Edison Co. of N.Y., Inc.*, 109 F. Supp. 2d 202, 207 (S.D.N.Y. 2000).

To meet this burden, the plaintiff may rely on evidence presented to establish her prima facie case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is not sufficient, however, for a plaintiff merely to show that she satisfies "*McDonnell Douglas*'s minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James*, 233 F.3d at 157. Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell*, 109 F. Supp. 2d at 207-08.

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove— particularly discrimination." 233 F.3d at 157; *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

b. The ADA

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case of unlawful discrimination on the basis of disability under the ADA, a plaintiff must show that (1) the defendant is an employer subject to the ADA; (2) the plaintiff was disabled within the meaning of the ADA or perceived to be so by his employer; (3) the plaintiff was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) the plaintiff suffered an adverse employment action because of his disability. *Brady v.*

*Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008).

After plaintiff establishes a prima facie case, the burden shifts to the defendant to prove a legitimate, non-discriminatory reason for the action. Then, plaintiff bears the burden of demonstrating that defendant's reasons are pretextual. Accordingly, although there are different standards for establishing a prima facie case of discrimination under the Title VII and the ADA, they share the same second and third steps of the *McDonnell Douglas* burden-shifting framework – defendant's burden to show a non-discriminatory reason and plaintiff's burden to demonstrate those reasons are pretextual. *See McBride v. BIC Products Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009); *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006); *see also Trane v. Northrop Grumman Corp.*, No. 11-CV-4040 (WFK)(AKT), 2015 WL 1057864, at *6 (E.D.N.Y. Mar. 10, 2015) (analyzing second and third *McDonnell Douglas* steps of national origin and disability claims together). Accordingly, the Court will analyze plaintiff's ethnic/national origin discrimination claims along with her disability discrimination claims under the second and third steps of the *McDonnell Douglas* framework.

2.  Application

Defendant argues that plaintiff cannot establish a prima facie case of disability discrimination because (1) she does not suffer from a disability as defined by federal and state law; (2) her grievances do not constitute adverse employment actions; and (3) plaintiff cannot demonstrate that the alleged adverse employment actions arose under circumstances giving rise to an inference of discrimination. Plaintiff alleges that her "respiratory problem," i.e., her reaction to alpha lipoic acid, qualifies as a disability or perceived disability and in response to her condition, she was forced to undergo a drug test, transferred to a different shift at a different plant without receiving an increase in pay, and then transferred to a customer service role to be "set up for failure," and then offered severance so that she would resign. Although plaintiff also alleges a claim for discrimination on the basis of national origin or ethnicity in her Complaint, she focuses on establishing a prima facie case of discrimination on the basis of disability in her opposition papers, and only mentions discrimination on the basis of race, national origin, or ethnicity in passing.

For purposes of this analysis, because defendant has produced evidence of non-discriminatory reasons that plaintiff cannot show are pretextual, the Court will assume without deciding that plaintiff has satisfied the minimal burden required to make out a prima facie case of discrimination.

Defendant has put forth legitimate, non-discriminatory reasons for the alleged adverse employment actions, including: (1) plaintiff was required to submit to a drug test because company policy required all employees involved in an accident resulting in bodily injury on company property or company time to submit to a drug test, (Ex. I to Def.'s Mem. of Law, at NBTY 942-48); (2) plaintiff was transferred to Amityville following a diagnosis of an adverse reaction to alpha lipoic acid, (Def.'s 56.1 ¶ 19); (3) plaintiff was subsequently transferred to Bohemia in a customer service position due to plaintiff's complaints that Amityville was too far from her home, (Def.'s 56.1 ¶¶ 23, 29); (4) plaintiff was again transferred back to quality assurance following plaintiff's complaints that the customer service work was difficult and frustrating, (Def.'s 56.1 ¶¶ 31, 34); (5) plaintiff was issued a written warning in response to making

"confrontational and disrespectful comments" and the unsubstantiated product failure, (Def.'s 56.1 ¶ 52); and (6) plaintiff was issued a final warning after taking product samples from the manufacturing floor, (Def.'s 56.1 ¶¶ 56, 58). *See, e.g.*, *Dorcely v. Wyandanch Union Free Sch. Dist.*, 665 F. Supp. 2d 178, 217 (E.D.N.Y. 2009) (finding that plaintiff's poor work performance, lack of professionalism, insubordination, and inappropriate workplace behavior as reflected in multiple reports and evaluations constituted a legitimate non-retaliatory reason for adverse employment action). Hence, the Court proceeds directly to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find national origin or disability discrimination by examining each party's evidence individually and then proceeding to evaluate the evidence as a whole. *See Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 314 (2d Cir. 1997); *Tomney v. Int'l Ctr. for the Disabled*, 357 F. Supp. 2d 721, 742 (S.D.N.Y. 2005).

Plaintiff primarily argues that an inference of discrimination is established because defendant's reason for the drug test and transfers are pretextual and cannot be bolstered by the fact that they drug tested other employees. Plaintiff further argues that the fact that Evans, who issued the drug test, was the subject of complaints of discrimination because he subjected employees of Mexican descent to adverse employment actions and condoned discrimination creates a material issue of fact precluding summary judgment. Defendant argues that plaintiff fails to meet her burden of establishing pretext because the record lacks evidence to show that defendant's articulated business reasons are false and unlawful.

Even viewing the facts in the light most favorable to plaintiff and drawing all inferences in her favor, plaintiff has not presented evidence from which a rational jury could find that defendant's non-discriminatory reasons are pretextual. First, plaintiff does not allege that anyone made remarks regarding her national origin or alleged disability. Second, although she claims generally that Mexican employees and American employees were treated differently, she offers no specific examples of such different treatment. Although plaintiff alleges that being drug tested constituted a discriminatory action, defendant's policy was to drug test all employees involved in an accident resulting in bodily injury on company property or company time and, in fact, they drug screened a number of employees, of varying positions, after the employee received medical treatment. (*See* Ex. I to Def.'s Mem. of Law, at NBTY 942-48, 1721-37.) Accordingly, plaintiff has pointed to nothing in the record that could support a rational inference that any adverse employment actions resulted from a discriminatory animus toward plaintiff because of her Mexican origin or alleged disability, or any other discriminatory reason. Therefore, no rational jury could conclude that defendant's reasons were pretextual.

In sum, viewing the evidence as a whole, it is clear that plaintiff's discrimination claim, at its core, simply rests on conclusory allegations that she was discriminated against because she is Mexican and suffered an alleged disability. However, she does not proffer any evidence to support her discrimination claims. Plaintiff's conclusory allegations that she was subject to discrimination cannot create any reasonable inference that discrimination motivated any adverse employment action. *See, e.g.*, *Bryant v. Wynne*, No. 2:07–340–SB–RSC, 2008 WL 4361242, at *14 (D.S.C. Sept. 24,

2008), *aff'd*, 318 F. App'x 174 (4th Cir. 2009) (granting judgment for defendant where plaintiff made conclusory assertions, including an allegation that "management had an unspecified history of not hiring minorities and EEO complainants," and noting that "[p]laintiff offers no specific facts to support these allegations and fails to show how any of them were connected to [the Superintendent's] hiring decision. These unsupported conclusory allegations do not constitute evidence and do not create triable issues of fact.").

The Court recognizes that it must proceed with great caution in granting summary judgment in discrimination cases where intent, as drawn from inferences, is a core issue. However, as the Second Circuit has noted, "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). In the instant case, plaintiff relies on pure speculation and has not produced any evidence to support a rational finding by a jury that, more likely than not, discrimination was a motivating factor in requiring her to submit to a drug test, relocating her between different facilities, or causing her disciplinary warnings. Accordingly, the Court concludes that plaintiff has failed to raise a genuine question of fact as to her Title VII and ADA discrimination claims and grants the motion for summary judgment on those claims.

B.   <u>Title VII Retaliation Claim</u>

Plaintiff also claims that defendant retaliated against her in response to her complaints of discrimination. Defendant argues that plaintiff fails to establish a prima facie case of retaliation because she did not participate in a protected activity or suffer materially adverse action as a result, nor can she establish a causal connection between her complaints and adverse actions. As set forth below, the Court agrees and grants summary judgment on the Title VII retaliation claim.

1.   Legal Standard

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). The Court evaluates a Title VII retaliation claim under the three-step, burden-shifting framework used for an adverse employment claim, as established by *McDonnell Douglas*. First, a plaintiff must establish a prima facie case of retaliation by demonstrating that "(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)). The term "protected activity" refers to action taken to protest or oppose statutorily prohibited discrimination. *See* 42 U.S.C. § 2000e-3; *see also Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000), *superseded on other grounds by* N.Y.C. Local L. No. 85. Informal as well as formal complaints constitute protected activity. *See Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). Title VII protects not only those employees who opposed employment practices made unlawful by the statute, but also those who have a "'good faith, reasonable belief that the underlying challenged actions of the employer violated the law,'" even if those actions did not. *McMenemy v. City of*

*Rochester*, 241 F.3d 279, 283 (2d Cir. 2001) (quoting *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 134 (2d Cir. 1999)). In determining whether a plaintiff has satisfied this initial burden, the Court's role in evaluating a summary judgment request is "to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).

If the plaintiff is able to establish a prima facie case of retaliation, the burden then shifts to the defendant to articulate a legitimate, non-retaliatory reason for the employment action. *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (stating that where the plaintiff succeeds in establishing a prima facie case, "then a presumption of retaliation arises and the employer must articulate a legitimate, non-retaliatory reason for the action that the plaintiff alleges was retaliatory"). If the employer carries that burden, the burden shifts back to the plaintiff to demonstrate by competent evidence that the reasons proffered by the defendant were pretext for retaliatory animus based upon the protected Title VII activity. *See Sista*, 445 F.3d at 169. Specifically, the plaintiff must establish that "but for the protected activity, [she] would not have been terminated." *Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11–CV–3625(MKB), 2013 WL 3968748, at *14 (E.D.N.Y. July 30, 2013); *see also Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013) (stating that a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer"); *Goins v. Bridgeport Hosp.*, 555 F. App'x 70, 73-74 (2d Cir. 2014) (same).

The Supreme Court has defined an "adverse employment action" in the Title VII retaliation context (distinct from and broader than the standard in the Title VII discrimination context) to mean an action that is "materially adverse" and that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations omitted). In particular, "the significance of any given act of retaliation will often depend upon the particular circumstances." *Id.* at 69.

2. Application

Defendant argues that plaintiff cannot demonstrate a prima facie case of retaliation because she neither participated in a protected activity nor suffered a materially adverse action as a result, and further, cannot establish a causal connection between a protected activity and adverse results. In opposition, plaintiff argues that after she complained of discrimination, she became the subject to several write-ups and was transferred several times.

As a threshold matter, it is questionable whether plaintiff actually engaged in protected activity. For a complaint to qualify as protected activity, the plaintiff is "required to have had a good faith, reasonable belief that she was opposing an employment practice made unlawful by Title VII." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quoting *McMenemy*, 241 F.3d at 285 (internal alteration omitted)). Reasonableness is assessed in light of the totality of the circumstances. *Id.* Mere subjective good faith belief is insufficient. *Id.* at 16. As discussed *supra* (notwithstanding the Court's decision to analyze the discrimination claims at the pretext stage, rather than review whether a

prima facie case exists), there is no evidence from which a reasonable jury could conclude that plaintiff was discriminated against on the basis of national origin, ethnicity, race, or disability, and there is also no evidence from which a rational jury could find that plaintiff's belief about discrimination was reasonable and in good faith. Plaintiff points to nothing that could support a reasonable belief that she was being discriminated against because she was Mexican or had a perceived disability. In any event, as discussed below, plaintiff's Title VII retaliation claim fails to survive summary judgment, even if she did engage in protected activity.

Even viewing the facts most favorably to plaintiff, the Court concludes that summary judgment on the Title VII retaliation claim is warranted. As discussed extensively above, defendant has put forth evidence of legitimate, non-retaliatory reasons for its actions, and plaintiff has not "responded with facts sufficient to warrant a reasonable jury finding by a preponderance of the evidence that the legitimate reasons offered by the defendant[] [was] not [its] true reasons, but were a pretext for retaliation." *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 117 (2d Cir. 2010) (internal quotation marks and alteration omitted).

Plaintiff's arguments to support her position are unpersuasive. First, although plaintiff claims that she was transferred several times in retaliation for her claims of discrimination, as previously discussed, plaintiff was moved between facilities and jobs in order that she not be exposed to alpha lipoic acid and then, to accommodate her request to be closer to home and her request for a different position after being displeased with the customer service job. Further, plaintiff's argument that she was subjected to several write-ups as a retaliatory measure is similarly unfounded.

Plaintiff admits to the January incident in which she found excessive "spots" on tablets produced by Corado's team, which resulted in a subsequent warning, as well as taking product samples, resulting in a final warning. (Pl.'s Resp. to Def.'s 56.1 ¶ 50; Pl.'s Counter 56.1 ¶ 112.) Thus, although plaintiff speculates that defendant retaliated against her for complaining of discrimination, even she admits that there were legitimate reasons underlying the warnings she received. Accordingly, plaintiff cannot establish a prima facie case of retaliation and even if she could, defendant has established legitimate, non-retaliatory reasons for her transfers and write-ups. Thus, because plaintiff cannot link the adverse employment actions to any retaliatory motivation, the Court grants defendant's motion for summary judgment on the Title VII retaliation claim. *See, e.g.*, *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) ("Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact."); *Kaur v. N.Y.C. Health & Hosps. Corp.*, 688 F. Supp. 2d 317, 340 (S.D.N.Y. 2010) (granting motion for summary judgment on retaliation claim, where plaintiff "failed to offer evidence from which a reasonable fact-finder could conclude that her treatment by Defendant was motivated by retaliatory animus . . . [and] failed to link any action on behalf of Defendant to a retaliatory motivation"); *Fleming v. MaxMara USA, Inc.*, 644 F. Supp. 2d 247, 269-70 (E.D.N.Y. 2009) (granting motion for summary judgment on retaliation claim, where plaintiff could not "rebut defendants' legitimate, non-discriminatory reasons proffered for their actions through evidence that the reasons are pretextual, or that retaliatory animus was nevertheless a motivating factor").

C.  Hostile Work Environment

Plaintiff also claims that she was subject to a hostile work environment due to her national origin, race, and disability. Defendant argues that plaintiff's claims must fail because the alleged conduct was not based on her national origin, ethnicity, or disability, nor was the alleged conduct sufficiently severe or pervasive as to create a workplace permeated with discriminatory intent or ridicule. As set forth below, the Court agrees with defendant and grants summary judgment on the hostile work environment claims.

1. Legal Standard

To establish a hostile work environment under Title VII, a plaintiff must show that her workplace was "permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "Isolated instances of harassment ordinarily do not rise to this level." *Cruz*, 202 F.3d at 570; *see also Williams v. Cnty. of Westchester*, 171 F.3d 98, 100-01 (2d Cir. 1999) ("[P]laintiff must show more than a few isolated incidents of racial enmity" to establish a claim of a racially hostile work environment (internal citations and quotation marks omitted)). A plaintiff must show not only that the conduct in question was "severe or pervasive enough to create an objectively hostile or abusive work environment," but also that "the victim . . . subjectively perceive[d] that environment to be abusive." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (internal citations and quotation marks omitted); *see also Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003). In addition, a plaintiff seeking to establish a hostile work environment claim must demonstrate that "a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002).

Relevant factors to consider in determining whether an environment is sufficiently hostile include "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Terry*, 336 F.3d at 148 (quoting *Harris*, 510 U.S. at 23). The Second Circuit has noted, however, that "[w]hile the standard for establishing a hostile work environment is high . . . [t]he environment need not be 'unendurable' or 'intolerable.'" *Id.* (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000)). Moreover, although a hostile work environment generally consists of "continuous and concerted" conduct, "a single act can create a hostile work environment if it in fact works a transformation of the plaintiff's workplace." *Feingold*, 366 F.3d at 150 (quotation marks and alteration omitted).

Further, to succeed on a hostile work environment claim in the instant case, plaintiff must link the actions by defendant to her ethnicity, national origin, or disability. Although "[f]acially neutral incidents may be included, of course, among the 'totality of the circumstances' that courts consider in any hostile work environment claim," *Alfano*, 294 F.3d at 378, plaintiff nevertheless must offer some evidence from which a reasonable jury could infer that the facially neutral incidents were in fact discriminatory. *See Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 440 (2d Cir. 1999), *abrogated on other grounds by Burlington N. & Santa Fe Ry.*

*Co. v. White*, 548 U.S. 53 (2006) ("But to sustain a Title VII hostile environment claim [plaintiff] must show more – she must produce evidence that she was discriminated against because of her race, and this she has not done."); *see also Alfano*, 294 F.3d at 378 (requiring "some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory").

The standard under Title VII is applicable to hostile work environment claims under the ADA. *See, e.g.*, *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008) ("Hostile work environment claims under the ADA are evaluated under the same standards as hostile work environment claims under Title VII.")

2. Application

Plaintiff argues that defendant subjected her to a hostile work environment by requiring her to submit to a drug test when she returned to work following her hospitalization, transferring her to another facility in a different role with different hours, refusing to appropriately respond to her complaints of discrimination, and subjecting her to disciplinary action. Defendant argues that the alleged conduct was not based on her national origin, ethnicity, or disability, nor was it sufficiently severe or pervasive as to create a workplace permeated with discriminatory intent or ridicule. Instead, plaintiff was merely required to comply with defendant's policies, procedures, and standards of conduct.

With respect to these claims, plaintiff has put forth no evidence from which a rational jury could conclude that her workplace was "permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Howley*, 217 F.3d at 153 (quoting *Harris*, 510 U.S. at 21). In addition, the events that plaintiff cites are facially-neutral, work-related conduct, and plaintiff has offered no evidence from which a rational jury could infer that these facially-neutral actions were discriminatory. In other words, plaintiff has not provided any evidence that would provide a circumstantial basis, or any other basis, for a rational jury to infer that the race-neutral conduct alleged was discriminatory. Plaintiff has simply not shown – through evidence of ethnicity or disability related comments or actions, through evidence of other similarly situated co-workers who were not subjected to the same conduct, or through any other evidence – how the alleged conduct was discriminatory based on plaintiff's national origin, ethnicity, or disability.

D. Constructive Discharge

1. Legal Standard

Plaintiff also claims that she was constructively discharged because she became so sick as a result of working at NBTY, that she could no longer work there. Defendant contends that there is no evidence that they deliberately created working conditions so difficult or unpleasant that a reasonable person in plaintiff's condition would have felt compelled to resign.

Constructive discharge occurs in the absence of a "discrete, identifiable act," when an employer, "'rather than directly discharging an individual, intentionally creates an intolerable atmosphere that forces an employee to quit voluntarily.'" *Flaherty v. Metromail Corp.*, 235 F.3d 133, 138 (2d Cir. 2000) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996)); *see also Morris v. Schroder Cap. Mgmt.*

*Int'l*, 481 F.3d 86, 89 (2d Cir. 2007) (stating that constructive discharge "occurs 'when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'" (quoting *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983))). Working conditions are sufficiently "intolerable" when they are "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987) (quoting *Pena*, 702 F.2d at 325). When such conditions are present, the Court will treat the plaintiff's voluntary resignation "as if the employer had actually discharged the employee" for the purpose of establishing a prima facie case of discrimination. *Id.* (applying the doctrine of constructive discharge to a discrimination claim filed under 42 U.S.C. § 1981).

2. Application

Here, there is no indication that defendant deliberately made plaintiff's working conditions so intolerable that a reasonable person in her position would have felt compelled to resign. Although plaintiff argues that threats of termination are sufficient to create a triable issue of fact precluding summary judgment, there is no indication that plaintiff was ever threatened with termination. Instead, she was offered a severance package, among other options such as a transfer or remaining in her position, as an option when she indicated her displeasure with her customer service position. (Def.'s 56.1 ¶ 33.) Further, plaintiff was not threatened with termination when she received either of her two disciplinary notices. Instead, she was offered coaching to assist her in moving forward. (Ex. I to Def.'s Mem. of Law, at NBTY 617). Plaintiff, instead, went on medical leave and, ultimately, found new employment rather than return to NBTY. Accordingly, plaintiff fails to point to any evidence to suggest that defendant deliberately created working conditions so intolerable that a reasonable person in plaintiff's position would be compelled to resign and, thus, no rational jury could find in plaintiff's favor on a constructive discharge claim in this case.

E. State Law Claims

Plaintiff's complaint also asserts claims under New York law. Having determined that the federal claims do not survive summary judgment, the Court concludes that retaining jurisdiction over any state law claims is unwarranted. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)).

Therefore, in the instant case, the Court, in its discretion, "'decline[s] to exercise supplemental jurisdiction'" over plaintiff's state law claims because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental

jurisdiction."); *Karmel v. Liz Claiborne, Inc.*, No. 99 Civ. 3608, 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state law claims given the absence of any federal claims that survive summary judgment.

IV. CONCLUSION

For the foregoing reasons, the Court grants defendant's motion for summary judgment as to plaintiff's federal claims. The Court declines to exercise supplemental jurisdiction over the state law claims and, thus, dismisses such claims without prejudice. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 17, 2016
Central Islip, NY

\* \* \*

Plaintiff is represented by Bruce McBrien of McBrien Law PC, 300 Rabro Drive, Suite 126, Hauppauge, NY 11788 and Cory H. Morris of Law Offices of Cory H. Morris, 300 E. Rabro Drive, Suite 126, Hauppauge, NY 11788. Defendant is represented by Domenique Camacho Moran and Heather P. Harrison of Farrell Fritz, P.C., 1320 Reckson Plaza, Uniondale, NY 11556.